CARPENTERS HEALTH AND WEL-
FARE TRUST FUND FOR CALIFOR-
NIA, Carpenters Pension Trust Fund for
Northern California; Carpenters Vaca-
tion & Holiday Trust Fund for Northern
California; Carpenters Apprenticeship
and Training Trust Fund for Northern
California; Carpenters Annuity Trust
Fund for Northern California, Plain-
tiffs–Appellants,

v.

BLA–DELCO CONSTRUCTION,
INC., Defendant–Appellee.

No. 91–16756.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 15, 1993.

Decided Nov. 3, 1993.

Susan A. Dovi, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, CA, for plaintiffs-appellants.

Joseph H. Fagundes, Diehl, Steinheimer, Riggio, Haydel & Mordaunt, Stockton, CA, for defendant-appellee.

Before: SCHROEDER, PREGERSON, and D.W. NELSON, Circuit Judges.

PREGERSON, Circuit Judge:

## I. OVERVIEW

Appellants (hereinafter the "Trust Funds") filed an action against employer Bla–Delco Construction, Inc. under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e)(1), and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), to recover delinquent employee benefit contributions. The district court dismissed the Trust Funds' complaint because of their failure to exhaust contractual remedies set out in a collective bargaining agreement. This appeal followed. We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand.

## II. BACKGROUND

Each Trust Fund is an employee benefit plan created by a separate, individual, written Trust Agreement. The Trust Agreements were negotiated between various employer associations and the Carpenters 46 Northern California Counties Conference Board, which acts on behalf of all affiliated Local Unions and District Counties in the 46 Northern California Counties (hereinafter collectively referred to as the "Union").

The Union and the various employer associations have also negotiated a collective bargaining agreement known as the "Carpenters Master Agreement" (hereinafter the "CBA"). The CBA provides for contributions to the individual Trust Funds. *The Trust Funds are not parties to the CBA.*

On November 6, 1980, and September 1, 1983, Bla–Delco entered into memorandum agreements with the Union. Under these memorandum agreements, Bla–Delco was subject to and bound by the CBA and the individual Trust Fund Agreements. Under the terms of the CBA, Bla–Delco was required to make certain employee benefit contributions to the Trust Funds.

The September 1, 1983 memorandum agreement referred to the CBA "dated June 16, 1980 through June 15, 1983" or "any other agreement designated in writing by the Union as the ["CBA"] for a term or period subsequent to June 15, 1983, or any subsequent modifications, changes, amendments, supplements, extensions or renewals of or to said [CBA]." In addition, the September 1, 1983 memorandum agreement stated that it "shall remain in full force and effect until June 15, 1986, and shall continue from year to year thereafter unless either party shall give written notice to the other of the desire to change or cancel not more than ninety (90) days nor less than sixty (60) days prior to June 15, 1986 or June 15 of any succeeding year."

On March 19, 1987, Bla–Delco sent a letter to the Union stating that it did not wish to renew its agreement with the Union effective June 15, 1987. On April 7, 1987, the Union responded in writing that Bla–Delco's notice of cancellation was untimely and that "the

contract requires by its terms to remain in effect until June 15, 1989." On April 14, 1987, Bla–Delco requested in writing a copy of the contract that was in effect until June 15, 1989 and stated that its letter of March 19, 1987 served as Bla–Delco's notice of its desire to cancel the memorandum agreement with the Union. Neither the Union nor Bla–Delco filed a grievance or requested arbitration under the CBA regarding its disputed termination.

In 1990, the Trust Funds filed a complaint against Bla–Delco under ERISA and the LMRA alleging that Bla–Delco had failed to make employee benefit contributions to the Trust Funds as required by the CBA and the individual Trust Fund Agreements. In response, Bla–Delco counter-claimed that it had terminated its obligations to make contributions to the Trust Funds because it had terminated the CBA with the Union as of June 15, 1987.

On February 13, 1991, the Trust Funds moved for partial summary judgment. The Trust Funds requested summary adjudication on two issues: (1) whether Bla–Delco was required to arbitrate with the Union the dispute over the alleged termination of the CBA; and (2) if the dispute was not subject to arbitration, whether Bla–Delco had effectively terminated the CBA.

The district court determined that the issue regarding the termination of the CBA was arbitrable. But the district court ruled that the duty to arbitrate this issue fell equally on Bla–Delco and the Trust Funds. The district court believed that the Trust Funds were subject to the arbitration clause of the CBA and that before filing the within action, the Trust Funds failed to exhaust the CBA's grievance and arbitration procedures. Accordingly, the district court, on a subsequent motion brought by Bla–Delco, dismissed the Trust Funds' complaint to recover employee benefit contributions on the grounds that the Trust Funds had not exhausted their contractual remedies under the CBA. The district court did not decide whether Bla–Delco had effectively terminated the CBA with the Union. The Trust Funds timely appealed the district court's dismissal of their complaint.

## III. STANDARD OF REVIEW

■ We review de novo the construction of the collective bargaining and trust agreements. *Santa Monica Culinary Welfare Fund v. Miramar Hotel*, 920 F.2d 1491, 1493 (9th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2855, 115 L.Ed.2d 1023 (1991).

## IV. DISCUSSION

### A. Requirement of Trust Funds to Arbitrate

■ The Trust Funds raise the following question on appeal: were the Trust Funds required to arbitrate their dispute with Bla–Delco before bringing this federal action to collect employee benefit contributions?

The Trust Funds contend that Bla–Delco and the Union did not intend to bind the Trust Funds by the arbitration clause in the CBA. In support of their argument, the Trust Funds direct us to the following section of the individual Trust Fund Agreements:

> The Board of Trustees shall have the power in the name of the Fund or otherwise, as in its discretion may be deemed necessary or desirable, to demand and enforce, by suit in court or otherwise, the prompt payment of contributions to the Fund including payments due to delinquencies and provided in [Section 10, of Article II[1]] *without being limited or restricted by any grievance or arbitration procedures provided in a Collective Bargaining Agreement.*

Health and Welfare Trust Fund Agreement, Article IV, Section 3; Pension Trust Fund Agreement, Article IV, Section 3; Vacation and Holiday Trust Fund Agreement, Article IV, Section 5; Apprenticeship and Training Trust Fund Agreement, Article IV, Section 3; Annuity Trust Fund Agreement, Article IV, Section 3 (emphasis added).

The district court found that this section applies only to matters involving the collection of past-due contributions, not to cases

---

1. This specific internal reference varies among agreements.

such as this, which involve whether the collective bargaining agreement in fact exists. The district court cites no authority for this conclusion. The Supreme Court rejected similar reasoning by a district court in *Schneider Moving & Storage v. Robbins,* 466 U.S. 364, 367, 104 S.Ct. 1844, 1846, 80 L.Ed.2d 366 (1984). In *Schneider,* the district court held that "although arbitration is not a prerequisite for 'simple collection matters' in which the employer's liability under the collective-bargaining agreement is clear, arbitration is required in claims ... where interpretation of the collective-bargaining agreement is at issue." *Id.* The Eighth Circuit reversed the district court, 700 F.2d 433, 443 (8th Cir.1983), and the Supreme Court affirmed the circuit's reversal. The Supreme Court held that the collective bargaining agreement did not require trustees of employee-benefit trust funds to arbitrate their claims against the employers before bringing collection suits in federal court. *Id.,* 466 U.S. at 376, 104 S.Ct. at 1851. The Supreme Court reached this conclusion even though the claims in *Schneider* raised questions of interpretation under the collective bargaining agreement. *Id.* at 372, 104 S.Ct. at 1849.

In support of its argument that the Trust Funds were required to arbitrate their claim to contributions, Bla–Delco directs us to the following section found in the individual Trust Fund Agreements:

Subject to the provisions of the Collective Bargaining Agreements, the rights and duties of all parties, including the Employers, the Signatory Associations, the Individual Employers, the Unions, the Local Unions, the District Councils, the Employees, Retired Employees and their beneficiaries, and the Trustees, shall be governed by the provisions of this Trust Agreement and the Pension Plan and any insurance policies or contracts procured or executed pursuant to this Trust Agreement.

Health and Welfare Trust Fund Agreement, Article VIII, Section 1; Pension Trust Fund Agreement, Article IX, Section 1; Vacation and Holiday Trust Fund Agreement, Article IX, Section 2; Apprenticeship and Training Trust Fund Agreement, Article VIII, Section 1; Annuity Trust Fund Agreement, Article IX, Section 1. This passage, however, does not expressly bind the Trust Funds to the arbitration and grievance procedures in the CBA. Bla–Delco also points to the CBA's arbitration clause and attempts to distinguish it from the clause at issue in *Schneider.* The arbitration clause of the CBA provides:

Any dispute concerning [the relationship of the parties,][2] any application or interpretations of this Agreement shall be subject to the following procedure:

1. In the event that a dispute arises on a job, it shall be first reported to the individual employer and/or the Business Agent of the appropriate Local Union or District Council who shall then attempt to adjust said grievance or dispute at the job site level.

2. If said grievance or dispute is not satisfactorily adjusted by the appropriate Local Union or District Council and the individual employer or his representative within three (3) days after submission to the individual employer, the matter may be submitted by either party to a permanent Board of Adjustment created for the settlement of such disputes.

CBA, Section 51.

This clause also does not expressly include the Trust Funds, who are not parties to the CBA. The references in Section 51 to the "parties," the "Local Union," the "District Council," and the "employers" are similar to the references in the *Schneider* arbitration clause to the "Union" or the "Company." *Schneider,* 466 U.S. at 370, 104 S.Ct. at 1848. In *Schneider,* the Supreme Court refused to infer a requirement where none was expressly provided. *Id.* at 374, 104 S.Ct. at 1850. Likewise, we decline to do so here. We are reluctant to infer such a requirement in light of the express contrary language in the individual Trust Fund Agreements—the Trust Funds "shall have the power ... to demand and enforce, by suit in court or otherwise, the prompt payment of contributions to the

---

**2.** The bracketed phrase is found in the CBA effective June 16, 1980 and June 16, 1983, but not in the CBA effective January 1, 1986 and April 1, 1988.

Fund ... *without being limited or restricted by any grievance or arbitration procedures in a Collective Bargaining Agreement....*" Health and Welfare Trust Fund Agreement, Article IV, Section 3; Pension Trust Fund Agreement, Article IV, Section 3; Vacation and Holiday Trust Fund Agreement, Article IV, Section 5; Apprenticeship and Training Trust Fund Agreement, Article IV, Section 3; Annuity Trust Fund Agreement, Article IV, Section 3 (emphasis added).

We find *Schneider* to be dispositive and hold that the Trust Funds are not bound by the arbitration and grievance procedures of the CBA. Therefore, the Trust Funds were not required to arbitrate the issue whether Bla–Delco effectively terminated the CBA with the Union.

In short, the Trust Funds were not parties to the CBA, which set out a grievance and arbitration procedure. Moreover, that agreement did not expressly bind the Trust Funds to its arbitration provisions. Finally, the individual Trust Fund Agreements contained no provision that required the Trust Funds and employers to arbitrate collection disputes. Accordingly, the district court erred in dismissing the Trust Funds' complaint because the Funds failed to exhaust the grievance and arbitration procedures in the CBA. The district court's dismissal of the Trust Funds' complaint is reversed.

### B. Availability of Contract Termination Defense on Remand

■ The Trust Funds also argue on appeal that Bla–Delco is precluded from raising contract termination as a defense to the Trust Funds' claim for contribution.

■ In an action to collect contributions, the Trust Funds stand in the position of third-party beneficiaries of the CBA. Generally, a third-party beneficiary's rights are subject to any contract defense that the promisor could assert against the promisee, if the promisee were suing on the contract. *Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 773 (9th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987). However, Congress and the courts have restricted the availability of contract defenses in trust fund collection actions because "millions of workers depend upon the employee benefit trust funds for their retirement security." *Id.*

■ In *Rozay's Transfer,* a trust fund collection action, we discussed the distinction between the permissible defense of "fraud in the execution" and the impermissible defense of "fraud in the inducement." *Id.* at 774.[3] Fraud in the execution is a permissible defense to a collection action because it results in the contract being *void ab initio,* while fraud in the inducement is an impermissible defense because it renders the contract merely voidable. *Id.*[4]

In this case, Bla–Delco does not contend that the CBA never existed because of fraud or illegality. The CBA was a valid contract and Bla–Delco was bound by its terms to pay contributions to the Trust Funds. The dispute centers on whether Bla–Delco effectively terminated the CBA. Consequently, the CBA was not "void," but merely "voidable," and therefore, Bla–Delco's purported termination of the CBA is not a legitimate defense to the Trust Funds' action. *See id.* at 775.

Bla–Delco could have pursued its dispute with the Union under the grievance and arbitration procedures of the CBA. As we stated above, the Trust Funds were not required to follow those procedures. It would contravene the policy to simplify and expedite trust fund collection actions to require the Trust Funds' in this case to litigate the termination dispute between Bla–Delco and the Union.

---

3. Fraud in the execution "induces a party to believe the nature of his act is something entirely different than it actually is"; fraud in the inducement "induces a party to assent to something he otherwise would not have." *Id.*

4. The Trust Funds cite cases that hold that oral modification of a collective bargaining agreement is not a legitimate defense in a contribution collection action. *See, e.g., Operating Engineers*

*Pension Trust v. Giorgi,* 788 F.2d 620 (9th Cir. 1986); *Maxwell v. Lucky Construction Co.,* 710 F.2d 1395 (9th Cir.1983); *Waggoner v. Dallaire,* 649 F.2d 1362 (9th Cir.1981). While helpful, these cases are not dispositive because they derive their holdings from a specific statutory requirement against oral modification in the LMRA.

1370

## V. CONCLUSION

■■ The district court's order dismissing the Trust Funds' complaint for failure to exhaust contractual remedies is REVERSED. This case is REMANDED for further proceedings consistent with this opinion.[5]

---

5. The Trust Funds request attorneys' fees on appeal. The individual Trust Fund Agreements provide that attorneys' fees and costs shall be added to the obligation of an employer in default on payments to the Trust Funds. An award of attorneys' fees, including fees incurred on appeal, is mandatory under 29 U.S.C. § 1132 once judgment is entered in favor of an employee benefit plan. *See* 29 U.S.C. § 1132(g)(2)(D); *Rozay's Transfer*, 791 F.2d at 778. The request is premature, however, because the Trust Funds have not yet obtained a final judgment in their favor. *See Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir.1983).