**ALASKA TROWEL TRADES PENSION FUND; Alaska Trowel Trading Apprenticeship & Training Fund, and Alaska Laborers–Construction Industry Health & Security Fund, Plaintiffs,**

v.

**Jack LOPSHIRE d/b/a Spenard Plastering Company, Defendant.**

No. A93–033 Civ. (JWS).

United States District Court, D. Alaska.

March 29, 1994.

As Amended May 4, 1994.

Randall G. Simpson and James A. Gasper of Jermain, Dunnagan & Owens, P.C., in Anchorage, AK, for plaintiffs.

Robert K. Stewart and James Juliusen of Davis, Wright & Tremaine, Anchorage, AK, for defendant.

## ORDER FROM CHAMBERS

SEDWICK, District Judge.

### INTRODUCTION

Plaintiffs Alaska Trowel Trades Pension Fund, Alaska Trowel Trading Apprenticeship & Training Fund, and Alaska Laborers–Construction Industry Health & Security Fund (the "trust funds") sue defendant Jack Lopshire d/b/a Spenard Plastering Company for delinquent contributions to employee benefit funds pursuant to 29 U.S.C. §§ 1132 and 1145 of the Employee Retirement Income

Security Act (ERISA). Defendant has moved for summary judgment arguing that it terminated the only operative agreement between it and Operative Plasterers & Cement Masons International Association, Local Union 867 which obligated defendant to make contributions to employee trust funds. Defendant says that he was under no obligation to make contributions upon termination of the agreement. Plaintiffs oppose defendant's motion and have cross moved for partial summary judgment.

Magistrate Judge Roberts has filed a Report and Recommendation that defendant's motion for summary judgment be denied and that plaintiffs' motion for partial summary judgment be granted in part and denied in part. Defendant objects. The court reviews the motions *de novo*. *U.S. v. Remsing*, 874 F.2d 614 (9th Cir.1989).

## FACTS

Defendant is a plasterer and cement mason employer. On November 12, 1976, defendant entered into a compliance agreement with Operative Plasterers & Cement Masons International Association, Local Union 867 (Local 867), by which it agreed to adhere to the Alaska Master Labor Agreement between the Association of General Contractors, Alaska Chapter (Alaska AGC), and Local 867. The compliance agreement specifically reaffirmed defendant's obligation to make contributions to the trust funds in accordance with the Alaska Master Labor Agreement. Defendant entered into a subsequent compliance agreement on April 5, 1978, reaffirming his obligations under the collective bargaining agreement between the Alaska AGC and Local 867, and its obligation to make contributions to the trust funds.

In April 1986, defendant wrote to Local 867 terminating the compliance agreement. The parties have submitted a letter dated April 2, 1986, from defendant to Local 867

giving notice of termination. The trust funds deny receipt of the letter. Defendant has also submitted a copy of the April 2, 1986, letter with the signature of Cheryl Stubbs acknowledging receipt on April 9, 1986. Ms. Stubbs was then employed by Local 867 as an office manager/receptionist.[1]

After April 1986 defendant continued to request and use union employees. Defendant also continued to make contributions to the trust funds.[2] In January 1993 defendant entered into another agreement with Local 867. During the period between April 1986 and 1991, the trust funds allege that four of defendant's employees became vested and received pension benefits. The trust funds further allege that during that period defendant's employees have received approximately $140,000 in medical benefits.

The trust funds contend that defendant underrepresented its contributions from April 1986 through 1991. They maintain that they did not discover these underrepresentations until late 1990 or early 1991.

## DISCUSSION

Defendant moves for summary judgment based upon his termination of the compliance agreements with Local 867. He argues that termination of the compliance agreements necessarily terminated any obligation to fund employee benefits by contributing in accordance with the collective bargaining agreement between Alaska AGC and Local 867. Defendant also argues that the trust funds' claims for delinquent contributions arising before January 1987 are barred by the statute of limitations.

Plaintiffs have cross moved for summary judgment. They maintain that defendant cannot raise termination of the compliance agreements as a defense to challenge their collection action. Alternatively, the trust funds deny that defendant terminated the

---

1. The parties note a discrepancy in defendant's testimony regarding the means of delivery of the April 2, 1986, letter. Defendant testified at his deposition that he mailed the letter to Local 867. Defendant has since redacted that testimony and now alleges that his attorney hand delivered the letter to Local 867 several days after April 2, 1986.

2. The trust funds submit remittance reports from defendant submitted to the trust funds. These reports detail continuous monthly contributions for the months January 1986 through February 1991.

compliance agreements with Local 867, and charge defendant adopted the collective bargaining agreement by its post-termination conduct, that the compliance agreements matured into a collective bargaining agreement, or that defendant's post-termination conduct estops him from denying the vitality of the compliance agreements.

A preliminary matter concerns the nature of the relationship between defendant and Local 867. Defendant contends that the compliance agreements were pre-hire agreements under 29 U.S.C. § 158(f) that could be terminated in accordance with the terms of the agreements, with no requirement to enter subsequent negotiations or maintain the status quo during those negotiations. The trust funds argue that the compliance agreements matured into a collective bargaining agreement under 29 U.S.C. § 159(a), thereby requiring defendant to enter subsequent negotiations and continue his employee contributions.

The National Labor Relations Act, 29 U.S.C. §§ 151, et seq. (NLRA), governs employee representation by labor organizations and defines unfair labor practices relating to union representation. An employer "violates the National Labor Relations Act, 29 U.S.C. §§ 151–169 (1982) ... if he enters into an agreement with a labor organization that has not won a representation election sponsored by the National Labor Relations Board or that has not been recognized pursuant to the procedures specified in the Act." *Orange Belt Dist. Council of Painters v. Kashak,* 774 F.2d 985, 987 (9th Cir.1985) (citing *International Ladies Garment Worker's Union v. NLRB,* 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961)). Under § 9(a) of the NLRA, 29 U.S.C. § 159(a), an exclusive bargaining agent must be "designated or selected for the purposes of collective bargaining by the *majority* of the employees." *Id.* (emphasis in original). The NLRA recognizes an exception for an "employer engaged primarily in the building and construction industry." 29 U.S.C. § 158(f). Such employers may enter into a labor agreement with a union without majority status among the employer's employees. These agreements are referred to as "pre-hire agreements" though

the agreement "need not be negotiated before a construction employer hires his workforce." *Id.* at 988.

Under a collective bargaining agreement, the employer must continue to negotiate a successive collective bargaining agreement and maintain the status quo under the expired collective bargaining agreement until the parties reach an impasse. 29 U.S.C. § 158(d). Unlike an employer that is a party to a § 9(a) collective bargaining agreement, a construction employer's obligations end upon expiration of a pre-hire agreement. The parties do not dispute that defendant is engaged primarily in the construction business, or that the 1976 and 1978 compliance agreements were pre-hire agreements. The disputes raised by the parties challenge the effectiveness of defendant's alleged termination, the effect defendant's continued use of union labor and contributions to the trust funds had on his obligations to continue to make those contributions, and the timeliness of the present action.

## I. *STATUTE OF LIMITATIONS*

Because ERISA does not contain a statute of limitations for actions to recover delinquent contributions, the court borrows the forum state's statute of limitations for breach of contracts. *Pierce County Hotel Employees and Rest. Employees Health Trust v. Elks Lodge, No. 1450,* 827 F.2d 1324, 1328 (9th Cir.1987). The parties do not dispute that the applicable Alaska statute of limitations for the trust funds' claims is six years under AS 09.10.050. *See Trustees for Alaska Laborers–Constr. Indus. Health & Sec. Fund v. Ferrell,* 812 F.2d 512, 516 (9th Cir.1987). The parties do challenge when the trust funds' causes of action accrued. The trust funds' cause of action arises under federal law, and, therefore, "federal law determines the time at which the cause of action accrues." *Northern Cal. Retail Clerks Unions v. Jumbo Markets,* 906 F.2d 1371, 1373 (9th Cir.1990). Under federal law, the trust funds' cause of action for delinquent contribution accrued when they knew or had reason to know of the injury giving rise to their cause of action. *Id.; Pierce County Hotel Employees,* 827 F.2d at 1328.

Defendant argues that, working backwards, "any claim that accrued before January 28, 1987 is barred." Defendant's Memorandum in Support of Motion for Summary Judgment (Docket No. 29) at 9. Plaintiffs argue that defendant has refused to submit to an audit of hours his employees worked, and frustrated any earlier discovery of the alleged underreporting for contributions. The trust funds state that they did not know of the underreporting, nor did they have any reason to know of the underreporting until an employee submitted pay stubs to them in October or November 1990 demonstrating that he had worked more hours than defendant had reported. Defendant argues that upon termination, the trust funds should have conducted a comprehensive audit.

For the reasons stated in Sections III and V, *infra,* the court finds that defendant did terminate the compliance agreements, but that the trust funds never had knowledge of that fact. Under defendant's argument there was no reason for the trust funds to conduct an audit of defendant's contributions because they never knew he had terminated the compliance agreements. Therefore, the only evidence in the record dictates a conclusion that the trust funds reasonably discovered defendant's underreporting of employee hours, at the earliest, in October or November 1990. The trust funds filed the present action on January 28, 1993. Applying the earliest date, October 1990, as the time the trust funds discovered the underreporting, the trust funds' action falls well within the six year statute of limitations of AS 09.10.-050.[3] Defendant has presented no specific facts to raise any genuine dispute regarding the timeliness of this action. The court holds that the action is timely filed.

## II. AVAILABILITY OF CONTRACT DEFENSES

A threshold question exists whether defendant may raise contractual defenses to challenge the trust funds' collection action. The trust funds are third party beneficiaries under collective bargaining agreements. Generally, a third party beneficiary is subject to all defenses which the promisor may assert against the promisee, but "[f]or reasons of public policy, traditional contract law does not apply with full force in actions brought under [ERISA] to collect delinquent trust fund obligations." *Southwest Admin., Inc. v. Rozay's Transfer,* 791 F.2d 769, 773 (9th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987). This is so because "millions of workers depend upon the employee benefit trust funds for their retirement security." *Id.* at 774. Based upon 29 U.S.C. § 1145, the Ninth Circuit has held that an employer may only raise contract defenses that render the collective bargaining agreement void rather than voidable.[4] *Id.* at 774–75.

The trust funds rely on *Carpenters Health & Welfare Trust v. Bla–Delco,* 8 F.3d 1365 (9th Cir.1993) for the proposition that defendant may not defend their collection action by raising termination as a defense. In *Bla–Delco,* employee trust funds sued an employer to recover delinquent contributions. The employer argued that it had terminated its memorandum agreement with the union that gave rise to its obligations to make contributions. The trust funds contested the timeliness of the notice of the termination, and argued that the agreement remained in effect. Neither the employer, nor the union filed for arbitration of the termination issue

3. *Defendant also opposes plaintiff's argument that the statute of limitations should be tolled. Defendant argues that tolling the statute of limitations is inappropriate because only tort causes of action are capable of being tolled, and the instant cause of action has its basis in contract law. In this instance, however, the contractual cause of action does not* accrue *until the plaintiff knows or has reason to know that an injury has occurred.* Jumbo Markets, *906 F.2d at 1372;* Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, *827 F.2d 1324, 1328 (9th Cir.1987). Therefore, under fed-*eral law, the material question of fact is when the six year statute of limitations began to run on the trust funds' claims.

4. Section 1145 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collective bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms of such plan or such agreement.

as required by the collective bargaining agreement.

The district court dismissed the action for failure to exhaust contractual remedies provided within the collective bargaining agreement. On appeal, the Ninth Circuit held that *Rozay* barred the employer from raising the termination of the collective bargaining agreement as a defense to the trust fund's collection action. The court noted that the "dispute centers on whether Bla–Delco effectively terminated the CBA." *Id.* at 1369. Because the attempted termination of the memorandum agreement rendered the contract voidable rather than void, the employer could not raise it as a defense to the trust fund's collection action.

Neither the parties to the case at bar, nor the court in *Bla–Delco,* discuss *Sheet Metal Workers' Int'l Assoc., Local 206 v. West Coast Sheet Metal,* 954 F.2d 1506 (9th Cir. 1992). There, the union and trust funds also initiated an action to collect delinquent contributions to employee trust funds. The employer had entered a collective bargaining agreement with the union under which it agreed to make monthly contributions. The collective bargaining agreement expired, and the employer and the union filed grievances with the National Joint Adjustment Board (NJAB), which imposed a new three year contract on the parties, in part, requiring monthly employer contributions. During litigation to enforce the NJAB imposed collective bargaining agreement, the employer's employees voted to decertify the union as their bargaining representative.

The court held that decertification of the union prospectively voided the employer's obligation to make contributions under the collective bargaining agreement. The court explained: "[a] contract to contribute to a trust fund of a union with which West Coast has no ongoing collective bargaining relationship makes no sense." *Id.* at 1509. The court dismissed as arbitrary the argument that the only defenses to a trust funds' collection action are illegality or that the collective bargaining agreement was void *ab initio. Id.*

Rather, the court noted that such an argument:

> failed to recognize that because the collective bargaining agreement became inoperative prospectively, it thereafter had no force or legal effect. Legal obligations have their source either in authority acting within its proper jurisdiction or in contract properly executed and currently effective. Here neither source exists.

*Id.*

■ Unlike the incomplete termination in *Bla–Delco,* defendant in the instant case gave notice of his intent to terminate the § 8(f) agreement to Local 867 which, if actually given, would render a § 8(f) agreement between defendant and Local 867, including defendant's agreement to make contributions, void not voidable. There was simply no legal obligation to make further contributions. To read *Bla–Delco,* in the manner in which the trust funds suggest, would vitiate an employer's legal right to terminate a collective bargaining agreement or pre-hire agreement. Moreover, such a reading would call for a conclusion that *Bla–Delco* overruled *West Coast sub silentio.* Neither proposition is supported by law, or common sense.[5]

### III. *TERMINATION*

■ Defendant argues that he terminated the compliance agreements, and his obligation to make employee contributions under the agreements, by sending a letter dated April 2, 1986, to Local 867, and a separate letter to Alaska AGC. The trust funds deny that the union ever received the letter terminating the compliance agreements. Under both the 1976 and 1978 compliance agreements, defendant was required to provide notice of termination.

In support of its motion, defendant presents the affidavit of Cheryl Stubbs, Local 867's office manager and receptionist. Ms. Stubbs states that she received the April 2, 1986, letter from defendant on April 9, 1986, on behalf of Local 867, and affixed her signature to the letter. The trust funds reply that the letter was not in Local 867's file where it

---

**5.** Only the Supreme Court or the Ninth Circuit *en banc* may overrule a panel's decision. *Hard v.* *Burlington Northern R.R. Co.,* 870 F.2d 1454, 1458 (9th Cir.1989).

should have been found, that the union's record keeping was thorough, and that minutes of the union's executive meetings make no reference to the termination notice, though the minutes routinely reflect other termination notices. The trust funds also raise defendant's post-letter conduct, and the inconsistent positions taken by Lopshire regarding the delivery of the letter. At his deposition, defendant stated he mailed the letter directly to Local 867. He later changed his testimony to state that his attorney had the letter hand-delivered a week to 10 days after he supposedly mailed it.

The question whether Local 867 ever received the April 2, 1986, letter is one of fact material to defendant's obligation to contribute to the employee trust funds. However, summary judgment remains appropriate unless there is a *genuine* dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The "mere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes the use of summary judgment." *Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir.1989) (citing *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988)).

Defendant presents evidence from a person authorized to receive mail for the trust funds that she received the letter to which she attached her signature and the date of receipt. To rebut this fact, the trust fund states that it cannot now find the letter where it should be located. That the April 2, 1986, letter cannot be found by the union, however, does not place into controversy the fact that Local 867's receptionist acknowledged receipt of the letter. Once placed into her hands, the law holds Local 867 to actual knowledge of defendant's termination regardless of whatever it may have subsequently done with the letter.[6] Because there is no genuine dispute of material fact, a summary determination that the union received the letter dated April 2, 1986, termi-

nating the compliance agreements is appropriate.

## IV. *ADOPTION BY CONDUCT*

The trust funds argue that defendant's post-termination acts adopted the collective bargaining agreement between Local 867 and Alaska AGC. Specifically, the trust funds point to defendant's admitted continued use of union employees and contributions to employee trust funds. From this, they conclude that even if defendant terminated the compliance agreements, he adopted the collective bargaining agreement.

The Ninth Circuit has not clearly defined the parameters of the adoption by conduct theory within the context of collective bargaining agreements. *See Arizona Laborers, Teamsters and Cement Masons, Local 395 Health and Welfare Trust Fund v. Conquer Cartage Co.,* 753 F.2d 1512 (9th Cir.1985). However, the Ninth Circuit has clearly held that adoption by conduct is not applicable to § 8(f) pre-hire agreements.

In *Hawaii Carpenters' Trust Funds v. Henry,* 906 F.2d 1349, 1354–55 (9th Cir.1990), an employee benefits trust fund sued a construction employer to recover delinquent contributions. The employer had previously made contributions in accordance with a § 8(f) agreement with the United Brotherhood of Carpenters & Joiners of America, Local 745. The trust funds there also sought to recover contributions for a period after the employee had allegedly terminated the § 8(f) agreement. The trust funds argued that the employer had adopted the § 8(f) agreement by its post-termination conduct.

The court, noting that it had never addressed the adoption by conduct theory within the § 8(f) setting, adopted the National Labor Relations Board's decision in *Garman Const. Co. v. International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am. Local Union No. 325,* 287 NLRB No. 12 n. 5 (Dec. 14, 1987), which held the theory inapplicable to § 8(f) agreements. The Ninth Circuit found *Garman* to be consistent with NLRB's subsequent decision in

---

6. The parties discuss at length how defendant delivered the April 2, 1986, letter to Local 867. The means of delivery is irrelevant. The material fact is Local 867's receipt of the letter.

*Deklewa v. International Ass'n of Bridge, Structural, & Ornamental Iron Workers, Local 3,* 282 NLRB No. 184 (Feb. 20, 1987), *enforced,* 843 F.2d 770 (3d Cir.1988), *cert. denied,* 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988), where the NLRB reversed a prior interpretation of § 8(f) to hold that a construction employer could not unilaterally repudiate a pre-hire agreement beyond the terms of the agreement. The Ninth Circuit noted:

> Since *Deklewa* mandates that the 8(f) employer is to be bound to the collective bargaining agreement for the life of the agreement without any evidence that the Union represents the majority of its employees, we decline the invitation to insist that an intent to be bound can be demonstrated by use of the adoption by conduct doctrine. The 8(f) employer is distinguishable from an employer outside of the 8(f) setting. In the case of an employer outside the 8(f) setting, the union represents a majority of the employees. Thus, at the termination of a collective bargaining agreement, the employer is obligated to bargain with the union for a new agreement. Adoption by conduct, as applied in that setting, focuses on whether the employer has adopted an agreement by his conduct rather than through the negotiations in which he would otherwise be obligated to participate.
>
> In the 8(f) setting, conduct would be used to create an agreement under much more ambiguous circumstances, for the employer would have no antecedent duty to negotiate an agreement. Far from creating a more stable labor environment, the use of the doctrine in 8(f) setting could encourage increased litigation on the issue of whether the employer had adopted an agreement. Considering the unique characteristics of the 8(f) setting, the union could remove all doubt by relying on something more than conduct. If it wished to have the employer bound to an agreement, it could insist upon an express agreement.

*Id.* at 1355.

The trust funds rely on cases involving collective bargaining agreements rather than pre-hire agreements under § 8(f). *See Ari-*

*zona Local 395 Health Fund v. Conquer Cartage Co.,* 753 F.2d 1512 (9th Cir.1985); *Painters Trust v. Sandvig–Ostergard, Inc.,* 737 F.Supp. 1131 (W.D.Wash.1990). These cases do not control an employer's actions within the distinct setting of an 8(f) agreement. As a matter of law, defendant's post-termination conduct did not adopt the pre-hire agreement.

## V. POST–TERMINATION CONDUCT

■ Termination of the compliance agreements does not end the court's inquiry. After termination defendant admitted he continued to use union labor, and to contribute to the trust funds in accordance with the collective bargaining agreement between Alaska AGC and Local 867. Defendant says those payments were nothing more than mistakes to which he has a right to reimbursement. The trust funds argue that defendant is estopped to deny his obligation to make contributions to the trust funds. Estoppel occurs where (1) the party to be estopped knows the facts; (2) intends that his conduct will be acted on or acts such that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting estoppel was ignorant of the true facts; and (4) relied on the other's conduct to his injury. *Audit Services, Inc. v. Rolfson,* 641 F.2d 757, 762 (9th Cir.1981).

The trust funds contend that defendant's continued use of union labor and payment of employee contributions estops him from challenging his obligation to make such payments under the collective bargaining agreement between Local 867 and Alaska AGC. They believe that the continued payments induced them, the union, and its members working for Lopshire, to believe that a valid collective bargaining agreement existed. The trust funds note that defendant had four employees vest in the union's pension program and paid over $140,000 in benefits to defendant's employees after the alleged termination.

Defendant replies that notice to the union must be imputed to the trust fund because a union official also acted as a trustee for the trust funds. Defendant asks the court to impute knowledge of the termination to the union official from the receptionist's signa-

ture on the termination letter. Defendant argues that Allen Pilto acted as business agent for Local 867, while at the same time serving as a trustee for the Alaska Trowel Trades Pension Trust, and the Alaska Trowel Trades Apprenticeship & Training Trust, and from this relationship the court must impute knowledge not only to the union, but also to the trust funds. However, the record does not establish that Mr. Pilto was a trustee for the trust funds or Local 867's business agent at the time defendant gave notice to the union.[7]

Even if the record showed Pilto was both a union representative and a trustee on April 9, 1986, when Ms. Stubbs received the letter; defendant fails to cite any authority for what amounts to a double imputation of knowledge. It is one thing to say that because the receptionist received the letter, knowledge is imputed to her employer, the union. It is quite another step altogether to say her knowledge flows through the union to Mr. Pilto and then to the trust funds. Because there is no evidence that Mr. Pilto had actual knowledge of defendant's termination of the compliance agreements, the court would refuse to impute the union's knowledge to the trust funds.

Additionally, defendant contends that he did not seek to use union members until approximately a year after the termination. He contends that he used union employees sporadically after termination, and even then did not always pay wages in accordance with union pay scales. Even assuming the truth of these allegations, there is no evidence defendant conveyed this information to the trust funds, and they do not negate or other-wise place into dispute the fact that defendant continued to make monthly employee contributions to the trust funds for almost five years after it purportedly terminated its obligation to do so.

Applying the four criteria identified in *Audit Services,* the court finds that defendant has failed to come forth with any evidence to demonstrate a genuine dispute of material fact as to why he should not be estopped to deny his obligation to make full contributions to the trust funds under the compliance agreements. Thus, summary judgment is appropriate on the issue of estoppel.[8]

## VI. APPEAL OF DENIAL OF DEFENDANT'S MOTION TO AMEND

Defendant appeals the denial of his Motion to Amend to join Local 867 as a party to this action. Magistrate Judge Roberts denied the motion based upon his conclusion that in actions such as this under 29 U.S.C. § 1132 the trust funds are the proper parties rather than the unions to enforce contributions to employee trust funds. Therefore, he concluded, the union was not a necessary party because it held no interest in the subject of the action. Defendant contends that the threat of potentially inconsistent judgment requires the court to join Local 867. Defendant also argues that it may be collaterally estopped to challenge certain issues while the union would not. The court reviews the magistrate's decision denying joinder for abuse of discretion. *Arizona Laborers, Teamsters and Cement Masons Local 395 Health and Welfare Trust Fund v. Conquer Cartage Co.,* 753 F.2d 1512 (9th Cir. 1985).

---

7. In support of his argument defendant directs the court's attention to the Second Amended Agreement and Declaration of Trust of the Alaska Trowel Trades Pension Trust, which Mr. Pilto signed on behalf of Local 867. However, the document is dated May 30, 1986, after the defendant gave notice of termination of the Compliance Agreement. Though Mr. Pilto also signed the Amended Agreement and Declaration of Trust of the Alaska Trowel Trades Apprenticeship & Training Trust on behalf of the Local 867, it too is dated after defendant gave notice of termination. The Amended Agreement and Declaration of Trust of Alaska Laborers–Construction Industry Health and Security Fund was executed well before defendant's termination notice was delivered to the union, but Mr. Pilto was not a signatory to that document. Defendant has not presented any evidence to establish that at the time the union received the notice of termination Mr. Pilto was acting as its business agent. Nor has defendant presented any evidence that Mr. Pilto was a trustee for the trust funds at that time.

8. Because the court finds that defendant is estopped to deny his obligation to make full contributions to the trust funds under the compliance agreements, it expresses no opinion whether the compliance agreements ever matured into a collective bargaining agreement.

Under Fed.R.Civ.P. 19(a) "[t]here is no precise formula for determining whether a particular nonparty should be joined...." *Bakia v. County of Los Angeles,* 687 F.2d 299, 301 (9th Cir.1982) (per curiam). Rather, "the rule emphasizes practical consequences and its application depends on the circumstances." *Takeda v. Northwestern Nat. Life Ins. Co.,* 765 F.2d 815, 819 (9th Cir.1985). The first consideration is whether complete relief may be granted in the absence of the nonparty. Here, defendant offers no reason why complete relief is not available. The obligation to make contributions is owed to the trust funds, not to the union.

Defendant argues that collateral estoppel may leave him exposed to a substantial risk of inconsistent obligations. In evaluating defendant's claim, the court need not determine with certainty that harm will occur, only that it is possible. *Id.* at 821. The court concludes that there is no substantial risk of inconsistent obligations. The union may apply collateral estoppel offensively when (1) there was a full and fair opportunity to litigate the issue in a previous action; (2) the issue was actually litigated in that action; (3) the issue was lost as a result of a final judgment in that action; (4) the person against whom collateral estoppel is asserted in the newer action was a party or in privity with a party in the previous action. *Pena v. Gardner,* 976 F.2d 469, 472 (9th Cir.1992). Here, the court's decision is that defendant is equitably estopped to deny the effect of his continued contributions *vis-a-vis* the trust funds which had no knowledge of the termination letter. If the union should later sue defendant, any issue of equitable estoppel would have to be decided in a context in which the union's knowledge, not the trust funds' knowledge, is controlling. Though the union might be able to institute another proceeding against defendant, the court finds that Magistrate Judge Roberts did not err in denying defendant's motion to join Local 867 as a party.[9]

**IT IS THEREFORE ORDERED THAT:**

Defendant Jack Lopshire's Motion for Summary Judgment (Docket No. 22) is **GRANTED IN PART** and **DENIED IN PART** as stated above. Plaintiffs' Cross Motion for Summary Judgment (Docket No. 52) is **GRANTED**. Magistrate Judge Robert's decision denying defendant's motion to amend to join Local 867 as a party is **AFFIRMED**.

---

9. Magistrate Judge Roberts also ordered that the trustees for the trust funds be substituted as plaintiffs. The court finds that the trust funds are proper plaintiffs to bring the collection action for delinquent contributions. ERISA provides that "[a]n employee benefit plan may sue or be sued under this subchapter as an entity." 29 U.S.C. § 1132(d)(1). It appears to be undisputed that the trust funds are employee benefit plans as that term is defined by ERISA. 29 U.S.C. § 1002(3).