906 F.2d 1349
 134 L.R.R.M. (BNA) 2777, 115 Lab.Cas. P 10,156
 HAWAII CARPENTERS' TRUST FUNDS (Health & Welfare Trust Fund
by its Trustees, Albert Hamamoto, Henry Iida, Roy Iwamoto,
Richard Moroye, Thomas T. Uyetake, et al.; Apprenticeship &
Training Trust Fund by its Trustees, Kenneth Shioi, Keiji
Nakano, James Perry, George Powers, Gordon Scruton, et al.;
Vacation & Holiday Trust Fund by its Trustees, John
Murchison, Tamateru Kodama, Waley Kwock, Gerald Sakamoto, et
al.; Annuity Trust Fund by its Trustees, Jiggs Tamashiro,
Randal Ching, Tamateru Kodama, et al.; Pension Trust Fund
by its Trustees, George McCarthy, Pepe D'Bayan, Raymond
Nagata, et al.), Plaintiffs-Appellants,
v.
James R. HENRY, dba James R. Henry Construction Co.,
Defendant-Appellee.
 No. 89-15679.
 United States Court of Appeals,
Ninth Circuit.
 Submitted June 4, 1990*.
Decided June 27, 1990.
 
 James K. Tam, Ashley K. Ikeda, James H. Wright, Moon, O'Connor, Tam & Yuen, Honolulu, Hawaii, for plaintiffs-appellants.
 Richard M. Rand, Torkildson, Katz, Jossem, Fonseca, Jaffe & Moore, Honolulu, Hawaii, for defendant-appellee.
 Appeal from the United States District Court for the District of Hawaii.
 Before SNEED, FARRIS and FERNANDEZ, Circuit Judges.
 FERNANDEZ, Circuit Judge:
 
 
 1
 Hawaii Carpenters' Trust Funds ("HCTF") appeals the district court's grant of summary judgment in favor of James Henry ("Henry") in this action for damages under the Labor Management Relations Act ("LMRA") and ERISA. HCTF alleges that Henry failed to make payments to HCTF pursuant to the terms of a collective bargaining agreement with the United Brotherhood of Carpenters & Joiners of America Local 745 ("Union"). We affirm.
 
 BACKGROUND FACTS
 
 2
 On January 9, 1984, Henry signed a short form contract[1] with the Union, thereby becoming a signatory to the 1984-1987 Master Agreement. Henry subsequently sent a timely notification to the Union to terminate his contract. On July 14, 1985, Henry signed a second short form contract to become signatory to the 1984-1987 Master Agreement. Pursuant to the Agreement, Henry was required to make contributions to HCTF for all carpenters that he employed.
 
 
 3
 On June 15, 1987, the Union sent Henry a letter indicating that the Union planned to modify and amend the 1984-1987 Master Agreement. Henry claims that on June 29, 1987, he sent the Union a notice of termination of the 1984-1987 Master Agreement. The Union asserts that it never received this termination letter. In addition, Henry claims that the Union approached him three separate times after June, 1987, and asked him to become a signatory to the new Master Agreement.
 
 
 4
 On December 15, 1987, HCTF audited Henry's records. The audit showed that Henry was current in his bookkeeping and contributions. The auditor, however, suspected that several workers whom Henry had listed as laborers were in fact carpenters.
 
 
 5
 The auditor subsequently sent forms to all of Henry's employees who were listed as laborers, and asked that the forms be completed and returned. The forms asked the employees to indicate what type of work they performed during their employment with Henry. Four employees returned the forms. One of the four indicated that he had performed carpentry work for the defendant. The other three indicated that they had performed laborers' work. Of the other forms sent, eight were returned marked addressee unknown, and the rest were not returned at all. The auditor also sent a business agent from HCTF to investigate Henry's jobsite. The agent reported that Henry would need more carpenters than Henry had reported to accomplish the type of work that he was doing.
 
 
 6
 As a result of this summary "investigation," the auditor sent Henry a letter demanding payment for the period between January 1986 to November 1987 for the hours worked for the employees listed as laborers. The auditor subsequently revised this demand to request contributions only for the hours up to August 30, 1987. Henry refused to make any payments.
 
 
 7
 On May 24, 1988, HCTF filed suit against Henry. HCTF's first two causes of action asserted claims for failure to submit time reports and make contributions. The third cause of action sought reimbursement for contributions owing after August 31, 1987. Henry subsequently made a motion to dismiss and a motion for summary judgment on the three causes of action. The court granted his motion for summary judgment on the first two causes of action, and also granted his motion to dismiss the third cause of action for lack of subject matter jurisdiction.
 
 STANDARD OF REVIEW AND JURISDICTION
 
 8
 The district court had jurisdiction pursuant to 29 U.S.C. Secs. 186 and 1001. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 
 9
 We review the grant of summary judgment de novo. West Coast Theater Corp. v. City of Portland, 897 F.2d 1519, 1525 (9th Cir.1990). We examine the record to determine, whether, viewing the evidence in the light most favorable to the non-moving party, there are genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 
 10
 The non-moving party cannot simply rest on the pleadings, but must present evidence "sufficient to establish the existence of an element essential to that party's case, and on which he will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-movant must show that "a fair-minded jury could return a verdict for [him] on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510-12, 91 L.Ed.2d 202 (1986).
 
 
 11
 The district court's interpretation of a contract is a mixed question of law and fact. Generally, we review "factual findings as to what the parties said or did" for clear error and principles of contract interpretation applied to the facts de novo. L.K. Comstock & Co., Inc. v. United Eng'rs and Constrs., Inc., 880 F.2d 219, 221 (9th Cir.1989). We review the district court's refusal to permit further discovery pursuant to Fed.R.Civ.P. 56(f) for an abuse of discretion. Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 523 (9th Cir.1989).
 
 DISCUSSION
 
 12
 I. Contributions for the period through August 30, 1987.
 
 
 13
 The district court granted Henry's summary judgment motion on HCTF's first two causes of action which covered the period prior to August 31, 1987, because HCTF simply failed to come forward with evidence to support those claims.
 
 
 14
 HCTF's primary response to Henry's motion for summary judgment was its own motion requesting that the court force Henry to comply fully with HCTF's discovery requests. The court treated HTCF's response as a Fed R.Civ.P. 56(f) motion for a continuance and denied the motion on the basis that HCTF had not been diligent in its conduct of discovery. The court also found that a continuance would have been pointless in any event because Henry had already given HCTF the only addresses that he had for his employees. HCTF contends that the court erred in denying its motion for a continuance. We disagree.
 
 
 15
 Under Rule 56(f) the court may refuse to grant a party's summary judgment motion on the ground that the opposing party needs time to discover central facts. However, the court will not grant such a motion if the movant has failed to pursue discovery diligently before summary judgment. Brae Transp. Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1442-43 (9th Cir.1986). HCTF claims that it has diligently pursued discovery, but that it has been frustrated at every turn by Henry's failure to comply with HCTF's discovery requests. The facts in the record simply do not support HCTF's assertion.
 
 
 16
 On February 9, 1988, Henry provided HCTF with the addresses of its employees. Over the next eleven months, HCTF made one attempt to contact those employees by sending out form letters on which the employee was to indicate whether he was a laborer or a carpenter. The result of that attempt was four responses, one of which indicated that the employee who had been listed as a laborer had allegedly performed carpentry work. HCTF made no subsequent attempt to depose or obtain an affidavit from that employee.
 
 
 17
 Henry also submitted an affidavit with signed statements from several of the individuals that he employed as laborers. One statement was facially inconsistent with the employee's earlier representations to HCTF. HCTF made no attempt to depose Henry or that employee regarding the inconsistencies.
 
 
 18
 In addition, HCTF has made no further attempt to contact the employees. HCTF claimed that it needed a continuance in order to obtain the laborers' employment applications. It asserted that it planned to use those applications to contact the laborers' families from which it hoped to receive a more current address for the laborers. The employment applications have been available since the beginning of the lawsuit. HCTF has offered no justification for its failure to seek that information at an earlier date.
 
 
 19
 The only evidence submitted by HCTF in support of its claim was a form letter signed by Melvin Hovakimian, an employee who Henry had listed as a laborer. That letter indicated that Hovakimian had performed carpentry work for Henry. Henry submitted both an affidavit stating that none of the individuals that he employed as laborers performed work as carpenters, and a monthly employee hours schedule demonstrating that Hovakimian could not have performed carpentry work for Henry prior to August 30, 1987--the date of the termination of the 1984-1987 Master Agreement--since he was not employed by Henry prior to that time. HCTF failed to present any evidence to contest this fact, nor did it present any other evidence to support its claim.
 
 
 20
 The evidence presented to the district court showed that the employees whom Henry employed as laborers prior to August 30, 1987 performed only laborer work. Moreover, HCTF clearly was not diligent in its conduct of discovery. Therefore, the court properly granted Henry's motion for summary judgment and denied HCTF's motion for a continuance on the first two causes of action.
 
 
 21
 II. Contributions for period after August 30, 1987.
 
 
 22
 HCTF asserts two bases for its claim that Henry is bound to make contributions after August 30, 1987: 1) the short form still binds him, and 2) he adopted the new agreement by conduct. We will consider each of these in turn.
 
 
 23
 A. Termination of the Collective Bargaining Agreement
 
 
 24
 Henry contends that the court lacks jurisdiction over the third cause of action because Henry's obligation to make contributions was terminated after August 30, 1987, by the Union's notice of its intent to modify and amend the 1984-1987 Master Agreement. HCTF claims that Henry is required to make contributions because he is bound to all modifications of the 1984-1987 Master Agreement by his signature on the short form. Thus, HCTF argues, regardless of the effect of the Union's letter on the underlying Master Agreement, the Union's notice could not terminate the short form agreement.
 
 
 25
 This court interprets short form contracts on a case by case basis. Zinser-Furby, Inc. v. San Diego County Dist. Council of Carpenters, 681 F.2d 1171, 1172 (9th Cir.1982). The Ninth Circuit has a "policy of strict construction of clear terms" of labor agreements. Irwin v. Carpenters Health and Welfare Trust Fund, 745 F.2d 553, 556 (9th Cir.1984).
 
 
 26
 The short form agreement in this case provides that:
 
 
 27
 From and after this date, hereinabove set forth, the undersigned Company agrees to abide by all of said terms and conditions in said Agreements and any amendments, modifications, changes, extensions, and renewals thereto. All amendments, modifications, changes, extensions, and renewals made to the Agreements hereafter shall become effective and shall remain in full force and effect when the [Union] provides the contractors notice of such changes of his last known address.
 
 
 28
 (emphasis added).
 
 
 29
 The language in the agreement plainly states that the signatory is to be bound by "any amendments, modifications, changes, extensions, and renewals" to the Master Agreements listed on the form. However, what it does not indicate is how the short form is to be terminated. The district court resolved this ambiguity by looking to the Master Agreement for guidance. Accord Carpenters Amended & Restated Health Benefit Fund v. Holleman Constr. Co. Inc., 751 F.2d 763 (5th Cir.1985) (the court viewed the two documents as interdependent and looked to Master Agreement for assistance in resolving an ambiguity regarding the termination of the short form agreement). Cf. Carpenter's Local Union No. 345 Health and Welfare Fund v. W.D. George Const. Co., 792 F.2d 64 (6th Cir.1986) (court refused to look beyond short form despite its reference to the master agreement).
 
 
 30
 The Duration section of the Master Agreement provides that:
 
 
 31
 The Agreement shall be binding upon the respective parties ... and shall be considered renewed from year to year thereafter unless either party hereto shall give written notice to the other of its desire to modify, amend, or terminate the same.... In the event that such notice is given, and only in such event, negotiations for a new agreement shall commence as soon as possible. If such notice shall not be given, the Agreement shall be deemed to be renewed for the succeeding year.
 
 
 32
 We interpret this provision to mean that a notice to amend the old agreement necessarily ends the old agreement and, therefore, prevents the old agreement from "renewing." Since the old agreement does not "renew," the amended agreement is necessarily "a new agreement." Thus, the district court was correct in finding that the old Master Agreement had terminated. However, the short form agreement covers not only renewals, but also amendments, which could include the amended old agreement. Thus, while the Master Agreement suggests that the short form terminates with the Master, it does not entirely resolve the ambiguity regarding how the short form is to be terminated. In order to fully resolve this ambiguity, we must examine the parties' course of conduct after the Union's notice of its intent to amend and modify the agreement. We find that the circumstances of this case strongly suggest that the Union's notice was intended to be a termination of both the Master Agreement and the short form agreement.
 
 
 33
 Henry stated that he sent a termination letter to the Union a little more than a week after receiving the Union's notice. This could plausibly be viewed as either a confirmation of Henry's understanding that notice had terminated the agreement or as evidence that Henry believed that the notice did not terminate the short form agreement and, therefore, that he had to send notice to terminate his obligations under the agreement. The former seems more reasonable. Moreover, Henry indicated that the Union approached him on three separate occasions after his receipt of its notice and requested that he sign a new Master Agreement, even though the Union, as it asserts, had not received his notice. It is likewise undisputed that HCTF's auditor changed his report to indicate that Henry only owed outstanding contributions through August 30, 1987. These facts strongly suggest that Henry and the Union believed that its notice terminated both agreements. Accord Holleman, 751 F.2d at 770 (court found that Union's efforts to obtain employer agreement to new Master Agreement evidence Union's belief that the short form would not survive termination of the Master Agreement). The Union submitted no evidence to the contrary.
 
 
 34
 We hold that the duration provision of the Master Agreement coupled with the parties' course of conduct following the Union's notification of intent to amend evinces an intent by the parties that the notice was a termination of both the Master Agreement and the short form agreement. Therefore, we affirm the district court's decision in this respect.
 
 B. Adoption by Conduct
 
 35
 HTCF contends that we have accepted the adoption by conduct theory in the pre-hire setting. We disagree. We have applied the theory outside of the pre-hire area. See e.g., Bay Area Typographical Union v. Alameda Newspaper, Inc., 900 F.2d 197, 199-200 (9th Cir.1990) (applied theory but found that successor employer had not accepted contract); Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc., 823 F.2d 289, 295 n. 8 (9th Cir.1987) (suggested that a successor employer may be bound by his conduct). However, we have not spoken to the doctrine's application to a case involving pre-hire agreements.
 
 
 36
 When we have not spoken to an issue that the NLRB has addressed, we defer to the NLRB's decision as long as it "is a reasonable and tenable construction of 8(f)." Mesa Verde Constr. Co. v. Northern California Dist. Council of Laborers, 861 F.2d 1124 (9th Cir.1988) (en banc). The NLRB, in its recent decision in Garman Const. Co. v. International Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., Local Union No. 325, 287 NLRB No. 12 n. 5 (December 14, 1987), has addressed the issue. In Garman, the administrative judge had applied the adoption by conduct theory and found that an employer had adopted a collective bargaining agreement. The NLRB reversed the judge's holding. The Board said that "[w]e do not find this adoption-by-conduct doctrine to be applicable in 8(f) cases." Id.
 
 
 37
 HCTF contends that the decision is in direct contradiction of prior NLRB decisions and is unreasonable. HCTF is wrong on both claims.
 
 
 38
 HCTF cites several cases in support of its assertion that the NLRB has traditionally applied the adoption by conduct theory in this setting. See Remodeling by Oltmann's Inc. v. Carpenters Local No. 400, 263 NLRB No. 169 (1982), enforced, 719 F.2d 1420 (8th Cir.1983); Haberman Constr. Co. v. United Brotherhood of Carpenters and Joiners of America, Local No. 1266, 236 NLRB No. 7 (1978), enforced, 618 F.2d 288 (5th Cir.1980), reh'g, 641 F.2d 351 (5th Cir.1981) (en banc); Vin James Plastering Co. v. Bricklayers, Masons, and Plasterers Int'l Union of Am., 226 NLRB No. 26 (1976). However, our review of the cases discloses that in each instance the Union had achieved a majority status among the employees who made up a permanent, stable work force for the employer.[2] Thus, the employer was no longer a mere 8(f) employer when the Board determined that the employer had, by its conduct, committed an unfair labor practice. Therefore, we fail to see how the Board's holding in Garman contradicts NLRB past precedent regarding 8(f) employers.
 
 
 39
 Moreover, the NLRB's decision is both tenable and reasonable in light of its recent holding in Deklewa v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, Local 3, 282 NLRB No. 184 (February 20, 1987), enforced, 843 F.2d 770 (3d Cir.1988), cert. denied, 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988), and this Circuit's adoption of that holding in Mesa Verde, 861 F.2d 1124. Prior to Deklewa, employers and unions had repeatedly litigated the issue of whether a union enjoyed a majority status in the employer's workforce so as to prevent the 8(f) employer from repudiating its agreement with the union prior to the termination of the collective bargaining agreement. In Deklewa, the Board held that in order to ensure stability in the pre-hire area, the employer who signed a collective bargaining short form could not repudiate the agreement, but was instead bound for the life of the agreement. The Deklewa Board also held that once the agreement had terminated, the employer was not bound to any new agreements and the union could not strike in order to compel the employer to sign an agreement.
 
 
 40
 Since Deklewa mandates that the 8(f) employer is to be bound to the collective bargaining agreement for the life of the agreement without any evidence that the Union represents the majority of its employees, we decline the invitation to insist that an intent to be bound can be demonstrated by use of the adoption by conduct doctrine. The 8(f) employer is distinguishable from an employer outside of the 8(f) setting. In the case of an employer outside of the pre-hire setting, the union represents a majority of the employees. Thus, at the termination of a collective bargaining agreement, the employer is obligated to bargain with the union for a new agreement. Adoption by conduct, as applied in that setting, focuses on whether the employer has adopted an agreement by his conduct rather than through the negotiations in which he would otherwise be obligated to participate.
 
 
 41
 In the 8(f) setting, conduct would be used to create an agreement under much more ambiguous circumstances, for the employer would have no antecedent duty to even attempt to negotiate an agreement. Far from creating a more stable labor environment, the use of the doctrine in the 8(f) setting could encourage increased litigation on the issue of whether the employer had adopted an agreement. Considering the unique characteristics of the 8(f) setting, the union could remove all doubt by relying on something more than conduct. If it wished to have the employer bound to an agreement, it could insist upon an express agreement.
 
 
 42
 Thus, we defer to the Board's decision in Garman and affirm the district court's dismissal of the third cause of action.[3]
 
 CONCLUSION
 
 43
 The short form agreement is silent about termination. This creates an ambiguity. The district court's determination that the Master Agreement controlled the termination did not entirely resolve the ambiguity. However, the circumstances surrounding and following the Union's notice support our decision that the parties believed that the short form agreement terminated with the Union's notice of its intent to amend or modify the Master Agreement. We, therefore, affirm the district court's order regarding the third cause of action.
 
 
 44
 We also defer to the NLRB's decision in Garman and decline to accept the adoption by conduct doctrine in the 8(f) setting. The Garman decision appears both tenable and reasonable as well as consistent with past NLRB precedent.[4]
 
 
 45
 Additionally, we affirm the district court's grant of summary judgment in favor of Henry on the first two causes of action.
 
 
 46
 Finally, we hold that Henry is not entitled to an award of attorney fees under 29 U.S.C. Sec. 1132(g)(1) since HCTF acted in good faith.
 
 
 47
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 Section 8(f) of the National Labor Relations Act ("NLRA") allows a construction industry employer to enter into agreements with a union before the union proves that the union represents a majority of the employer's employees
 
 
 [2]
 HCTF does not argue that Henry had a duty to bargain with the Union
 
 
 [3]
 Of course, this is not to say that parties conduct will never be of significance. For example, as we have noted above, it may be considered when it is necessary to construe the meaning of a short form agreement. However, here no such evidence was presented by HCTF
 
 
 [4]
 Of course, we of necessity disapprove of the contrary conclusion in Shelton v. Hawaii Carpenters' Pension, Health & Welfare, Apprenticeship, Vacation & Holiday and Annuity Trust Funds, 691 F.Supp. 251, 255 (D.Hawaii 1988)