ALASKA TROWEL TRADES PENSION FUND; Alaska Trowel Trades Apprenticeship & Training Fund; Alaska Laborers–Construction Industry Health & Security Fund, Plaintiffs–Appellees,

v.

Jack LOPSHIRE, d/b/a Spenard Plastering Co., Defendant–Appellant.

No. 95–35766.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 10, 1996.*

Decided Dec. 26, 1996.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

Robert K. Stewart, Jr. Davis, Wright, Tremaine and James H. Juliussen, Anchorage, AK, for defendant-appellant.

Randall G. Simpson, Jermain, Dunnagan & Owens, Anchorage, AK, for plaintiffs-appellees.

Before: BROWNING, D.W. NELSON, and FERNANDEZ, Circuit Judges.

Opinion by Judge BROWNING; Dissent by Judge FERNANDEZ.

JAMES R. BROWNING, Circuit Judge:

During the 1970s, defendant Jack Lopshire, doing business as Spenard Plastering Company, entered into pre-hire labor agreements with Local 867 of the Operative Plasterers and Cement Masons Union pursuant to § 8(f) of the National Labor Relations Act. These agreements obligated Lopshire to contribute to the various plaintiff Trust Funds on behalf of all plasterers and cement masons he employed.

In April 1986, Lopshire notified the union he was repudiating the current pre-hire agreement,[1] but did not notify the Trust Funds. Despite the repudiation, Lopshire continued to use union labor and submit contribution reports and payments to the Trust Funds from 1986 until March 6, 1991. Lopshire made reports and payments only on behalf of union employees, however, and did not report all hours worked by those employees. The Trust Funds allege they were not aware of Lopshire's underreporting until late 1990 and did not learn of Lopshire's repudiation of the pre-hire agreement until January 1991. Lopshire and the union entered into a new labor agreement in January 1993.

Relying on the reports and payments made by Lopshire from 1986 to 1991, the Trust Funds credited employees with pension service credits, purchased annuities for at least four employees, and retained insurance companies to provide medical coverage for employees listed in Lopshire's reports.

The Trust Funds brought this action against Lopshire under the Employee Retirement Income Security Act (ERISA) to recover the contributions required by the agreement for all covered employees. Lopshire moved for summary judgment, arguing that he was under no obligation to contribute after his repudiation of the agreement in April 1986. He also counterclaimed to recover contributions made after that date. The Trust Funds filed a cross-motion for summary judgment, arguing Lopshire was equitably estopped from denying his obligation to contribute. The district court held Lopshire had repudiated the agreement, but granted summary judgment against him on the theory of estoppel, holding Lopshire liable for unpaid contributions due for all employees under the agreement from 1986 until the end of 1992. *Alaska Trowel Trades Pension Fund et al. v. Lopshire,* 855 F.Supp. 1077 (D.Alaska 1994). We affirm in part and reverse and remand in part.

## DISCUSSION

### I.

▇ Lopshire argues that the payments he made to the Trust Funds could not provide a basis for equitable estoppel because they were illegal under § 302(a) of the Labor Management Relations Act (LMRA), which generally forbids payments by an employer to labor organizations or their representatives. 29 U.S.C. § 186(a). However, subsection (c)(5)(B) of § 302 permits payments by an employer to an employee benefit trust fund if made pursuant to a detailed written

---

1. We ruled in *Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers* that a § 8(f) pre-hire agreement may not be unilaterally repudiated prior to a NLRB–certified election or to termination of the agreement. 861 F.2d 1124, 1126 (9th Cir.1988). However, since we also held that this new rule should not apply retroactively, *Mesa Verde Constr. Co. v. Northern Cal. Dist. Council of Laborers,* 895 F.2d 516, 518–20 (9th Cir.1989), it does not apply to this case.

agreement. 29 U.S.C. § 186(c)(5)(B).[2] The requirement of a written agreement may be satisfied by a collective bargaining agreement even after it has expired. *NLRB v. Carilli*, 648 F.2d 1206, 1214 (9th Cir.1981). Moreover, an expired agreement will satisfy § 302(c)(5)(B) even after post-expiration negotiations have reached an impasse. *Id.* at 1214; *Cuyamaca Meats, Inc. v. San Diego & Imperial Counties Butchers' & Food Employers' Pension Trust Fund*, 827 F.2d 491, 498 (9th Cir.1987).

■ The expired agreements at issue in *Carilli* and *Cuyamaca* were § 9(a) collective bargaining agreements with unions that had achieved majority status. This case involves a pre-hire agreement authorized by § 8(f) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(f). We conclude that a repudiated § 8(f) agreement also satisfies the writing requirement of § 302(c)(5)(B).

An *expired* § 9(a) agreement satisfies the § 302(c)(5)(B) writing requirement in part because even after expiration of such an agreement, an employer has a duty to bargain in good faith and maintain the status quo as to wages and working conditions until a new agreement or an impasse is reached. *Carilli*, 648 F.2d at 1214. As Lopshire points out, this rationale does not apply to a repudiated § 8(f) agreement because an employer owes no duty to the union after a § 8(f) agreement terminates. *Hawaii Carpenters' Trust Funds v. Henry*, 906 F.2d 1349, 1355 (9th Cir.1990). However, an expired § 9(a) agreement satisfies § 302(c)(5)(B) for a second reason equally applicable to a repudiated § 8(f) agreement: the agreement provides a sufficient safeguard against the illegal payments § 302(c)(5)(B) is intended to prevent. In either case, the written agreement, while no longer in force, contains the detailed basis on which payments are to be made, as required by the statute.

As we have explained, expired bargaining and trust agreements can be "sufficient to satisfy the requirements of § 302(c)(5) and to permit continued payments to the trust funds." *Carilli*, 648 F.2d at 1214. Since there is no contention that the pre-hire agreements in this case failed to comply with the detailed requirements of § 302(c)(5)(B), and since there is no evidence or suggestion of the extortion or corruption § 302 was intended to prevent, the written pre-hire agreement constitutes a sufficient safeguard against illegal payments and satisfies § 302(c)(5)(B).

Since Lopshire's contributions fall within the § 302(c)(5)(B) exception to the prohibition of § 302(a), the argument that "the doctrine of estoppel cannot be invoked to compel ... an illegal act," *Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106, 1108 (9th Cir.1976), is not available to Lopshire.

We also reject Lopshire's reliance on general statements in *DeVoll v. Burdick Painting, Inc.*, 35 F.3d 408, 412 (9th Cir.1994), and *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir.1992), that application of equitable estoppel in ERISA actions is limited to cases involving oral representations concerning ambiguous provisions in a trust plan. The cases relied on by Lopshire involved claims for benefits inconsistent with the provisions of a written plan. We have held that potential beneficiaries may not assert equitable estoppel to alter the terms of such plans. *See, e.g., DeVoll*, 35 F.3d at 412 (holding that an employee could not assert estoppel against an employer who had orally promised to provide health benefits comparable to those provided before employer became a nonunion employer); *Greany*, 973 F.2d at 820–22 (rejecting an insured's claim, based on estoppel, that insurer should provide coverage beyond written termination date).

We have recognized the availability of estoppel in ERISA cases in other contexts, however. *See, e.g., Dockray v. Phelps Dodge Corp.*, 801 F.2d 1149, 1155 (9th Cir.1986)

---

**2.** 29 U.S.C. § 186(c)(5)(B) provides, in relevant part, that the prohibition against such payments does not apply to:

money ... paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents ... [provided that] the detailed basis on which such payments are to be made is specified in a written agreement with the employer ...

(where employer had previously told permanently replaced employee that no work was available, employee could assert equitable estoppel against pension plan administrator to recover benefits due to employees who were laid off for lack of work); *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir.1985) (holding equitable estoppel may be asserted against employer to establish eligibility for benefits or to demonstrate that application for benefits had been approved, but finding necessary elements of estoppel not present). Other circuits have done so as well. *See, e.g., Black v. TIC Inv. Corp.*, 900 F.2d 112, 114–15 (7th Cir.1990) (applying estoppel to require an unfunded single employer to provide severance benefits under ERISA plan); *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1300 (6th Cir.1991) (applying estoppel to require employer to pay health and life insurance premiums and distinguishing cases where application of estoppel would lead to payments out of a common fund). The concern for protecting the trust fund, which underlies the rejection of estoppel in some ERISA cases, *see, e.g., Greany*, 973 F.2d at 822, *Davidian v. Southern Cal. Meat Cutters Union*, 859 F.2d 134, 136 (9th Cir. 1988), is not present here. Estopping Lopshire from denying his obligation to contribute to the fund will not threaten diminution of the fund. We conclude that in the circumstances of this case, the Trust Funds may assert a claim based on estoppel.

## II.

The district court held that Lopshire's continued use of union labor and continued contributions to the Trust Funds equitably estopped him from denying his obligation to make contributions pursuant to the repudiated agreement. As Lopshire points out, the continued use of union labor could not have been relied on by the Trust Funds because they did not know about it. The question remains, however, whether the contribution reports and payments provide the basis for estoppel.

Lopshire argues that he did not subjectively intend to hold himself out as acting in compliance with the pre-hire agreement by making monthly reports and payments and that the Trust Funds should not have relied upon the reports and payments as showing such an intent. The intent element of estoppel can be established objectively through acts upon which the other party has a reasonable right to rely. *United States v. Georgia–Pacific Co.*, 421 F.2d 92, 98 (9th Cir.1970). In light of Lopshire's appearance of continued adherence to the agreement by regularly submitting monthly reports pursuant to the agreement over a five-year period, it was reasonable for the Trust Funds to believe Lopshire intended to comply.

The remaining question is the extent of the injury sustained by the Trust Funds. We note at the outset that the district court erred in estopping Lopshire for the period from the end of February 1991[3] through December 1992. During this period, Lopshire made no reports at all upon which the Trust Funds could have relied.

As we have said, Lopshire continued to make contributions on behalf of some, but not all, of his union employees after repudiation. Lopshire did not inform the Trust Funds he was reporting only on some union employees, however, and he did not report all the hours worked by those union employees for whom he did make contributions.[4] Unaware of Lopshire's underreporting, the Trust Funds obtained insurance coverage, gave pension credits, and obtained pensions on behalf of the employees reported to them by Lopshire. Obviously, the Trust Funds could not have relied on the reports with respect to employees who were not listed, and the district court erred in estopping Lopshire with respect to those employees.[5]

---

3. The last report, made on March 6, 1991, covered the reporting period ending on February 26, 1991.

4. As Lopshire concedes, he reported just enough hours to ensure that his employees did not lose their insurance and other benefits.

5. Because Lopshire apparently never listed any persons other than plasterers or cement masons on the reports, the issue of whether any damages may be recovered by the Trust Funds for employees not covered by the agreement is moot.

The record does not disclose, however, what damage the Trust Funds sustained with respect to the employees who were listed. We remand for the calculation of such damage, if any.[6]

The Trust Funds' argument that the law requires an employer to contribute on behalf of all employees, irrespective of union membership, presumes the existence of a valid underlying collective bargaining agreement to that effect. *Cf. Pierce County Hotel Employees & Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450,* 827 F.2d 1324, 1327 (9th Cir.1987) (where a collective bargaining agreement covers "all employees" or "any person performing work under the agreement," contributions are due on behalf of all employees irrespective of union membership). After Lopshire repudiated the § 8(f) agreement in 1986, no valid underlying agreement existed, and none could have arisen under an "adoption by conduct" theory. *See Hawaii Carpenters' Trust Funds,* 906 F.2d at 1354–55 (rejecting adoption by conduct theory in the § 8(f) pre-hire setting). The basis for recovery here is estoppel, not breach of contract.[7]

### III.

We reject Lopshire's counterclaim for contributions he made after repudiating the pre-hire agreement.

■ We have recognized an implied right to recover mistaken payments to a trust fund pursuant to § 403(c)(2)(A) of ERISA. 29 U.S.C. § 1103(c)(2)(A). The right to a refund is not automatic, however, even if the employer can demonstrate the requisite mistake of fact or law; the employer must also show that the equities favor restitution. *Award Serv., Inc. v. Northern Cal. Retail Clerks Unions & Food Employers Joint Pension Trust Fund,* 763 F.2d 1066, 1069 (9th Cir.1985).

■ The district court held on the facts of this case that Lopshire is not entitled to recover any payments made to the Trust Funds. We agree that the equities do not favor restitution. Lopshire admitted he made the post-repudiation payments deliberately to ensure his employees would receive insurance coverage and other benefits. Lopshire's employees received the benefits for which Lopshire made contributions, and he himself obtained the benefits of economic peace with the union. The Trust Funds relied on the continuing contributions by Lopshire and provided the benefits received by Lopshire's employees.

AFFIRMED IN PART, and REVERSED and REMANDED IN PART.

FERNANDEZ, Circuit Judge, dissenting:

I dissent from the majority opinion to the extent that it holds that the Trust Funds are entitled to recover further amounts from Lopshire for employee work hours, which were not reported. The contrary view allows the Trust Funds to partially enforce a properly repudiated pre-hire agreement by using what amounts to an adoption by conduct theory. That they are not entitled to do. *See Hawaii Carpenters' Trust Funds v. Henry,* 906 F.2d 1349, 1354–55 (9th Cir.1990).

While I agree that the Trust Funds could and did rely upon the receipt of reports and monies from Lopshire, that is *all* they had a right to rely upon. Had Lopshire reported that he owed for "X" hours of labor and then sent in money for something less than "X," the Trust Funds might well have a basis to complain, but he did not do that.

The Trust Funds gave whatever benefits they gave based solely upon the amounts Lopshire paid to them. Had the employees worked only the reported hours, their employee benefits would have been the same as those granted to them. As it is, the Trust Funds were entitled to nothing at all. Thus, they are not entitled to more than they re-

---

6. We make no ruling here on the possible liability of Lopshire to his employees; no such claims are before us.

7. The Trust Funds request attorney's fees on appeal pursuant to 29 U.S.C. § 1132. Because the

Trust Funds have not yet obtained a final judgment in their favor, we remand the request to the district court. *See Carpenters Health & Welfare Trust Fund v. Bla–Delco Constr., Inc.,* 8 F.3d 1365, 1370 n. 5 (9th Cir.1993).

ceived. In other words, neither Lopshire nor the Trust Funds are entitled to any relief.

Thus, I respectfully dissent.